## APPEALS OF ADDISON MILLER AND GEORGE FALTICO.

Docket Nos. 1596, 1601. Submitted August 10, 1925. Decided February 13, 1926.

The composition of and the distributive shares' in certain partnerships during the years 1918, 1919, and 1920, determined.

*Simon Michelet, Esq.*, for the taxpayers.
*Willis D. Nance, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

The Commissioner asserted a deficiency in income tax for the years 1918, 1919, and 1920 against the taxpayer Addison Miller in

the aggregate sum of $110,044.08, and against the taxpayer George Faltico in the sum of $8,136.04. The controversy is principally an issue of fact as to the composition of and the distributive shares in certain partnerships during the years in question. The appeals of the above taxpayers were consolidated for the purpose of taking testimony in the hearing before the Board.

FINDINGS OF FACT.

1. In the year 1916 the taxpayer Addison Miller and others formed a partnership composed of Addison Miller, A. T. Miller, Joseph Colianni, and Paul V. Colianni. A. T. Miller and Paul V. Colianni were the younger brothers, respectively, of Addison Miller and Joseph Colianni. The articles of agreement were as follows:

ST. PAUL, MINN., *May 1, 1916.*

Effective this date and superseding any and all previous agreements, which we hereby jointly and severally acknowledge to have been satisfactorily accounted and discharged, this agreement is drawn to control the operation and division of monies in the business known as Miller & Colianni, a partnership composed of the signers of this agreement as partners: to wit, Addison Miller, A. T. Miller, Joseph Colianni, and Paul V. Colianni, and to control the operation of any and all business appertaining to such firm.

The partners are to be as above noted, each with equal standing individually, but the combined financial interest of Colianni brothers is always to be maintained equal to that of Miller brothers so that there shall be no balance of power or influence either way.

The business to be conducted by the firm to consist, as in the past, of carrying on railway coal dock operations and other railway maintenance operations under contract from railway companies.

Profits or losses to be adjusted at dates mutually agreeable in the same proportion as of funds supplied which are acknowledged to be equal upon this date for the " Colianni interests " and the " Miller interests " as above defined.

Partners engaged in the active conduct of the business to be either allowed reasonable compensation aside from profits or to serve without compensation if all interests agree that the work is handled in equitable proportion and burdens equally distributed.

The business is entirely solvent as of this date and each of the partners is thoroughly acquainted with its condition.

This agreement may be terminated by any partner serving notice of reasonable length, either orally or in writing, of his desire for an accounting of a final nature and the satisfactory disposition of all details in connection therewith.

| (Signed) | JOS. COLIANNI |
|----------|---------------|
| " | ADDISON MILLER |
| " | A. T. MILLER |
| " | PAUL V. COLIANNI |

The partnership carried on its business until December 1, 1919, as "Miller & Colianni," and thereafter as "Addison Miller."

104881—27——50

2. During the years 1917 to 1920, inclusive, there were certain changes in the membership of the partnership and in the distributive shares of income of the partners.

The members of the partnership and their distributive shares, as determined by the Commissioner and as claimed by the taxpayers for the years in question, are as follows:

| | As determined by Commissioner. | As claimed by taxpayer. |
|---|---|---|
| YEAR 1918. | | |
| Jan. 1 to July 17: | *Per cent.* | *Per cent.* |
| Addison Miller | 50 | 33⅓ |
| Joseph Colianni | 50 | 50 |
| A. T. Miller | | 16⅔ |
| July 17 to Dec. 31: | | |
| Addison Miller | 50 | 33⅓ |
| Joseph Colianni | 50 | 25 |
| A. T. Miller | | 16⅔ |
| George Faltico | | 25 |
| YEARS 1919 AND 1920. | | |
| Jan. 1 to Dec. 1, 1919: | | |
| Addison Miller | 50 | 25 |
| Joseph Colianni | 50 | 33⅓ |
| A. T. Miller | | 25 |
| George Faltico | | 8⅓ |
| P. M. Faltico | | 8⅓ |
| Dec. 1, 1919, to Dec. 31, 1920: | | |
| Addison Miller | 50 | 37½ |
| George Faltico | 50 | 12½ |
| P. M. Faltico | | 12½ |
| A. T. Miller | | 37½ |

The net income of the partnership of Miller & Colianni for the years in question, as agreed by the taxpayers and the Commissioner, was as follows:

| | |
|---|---|
| 1918 | $ 59, 458. 42 |
| 1919 | 99, 154. 32 |
| 1920 | 144, 726. 02 |

The Commissioner has considered the taxpayer Addison Miller a member of the firm with an unvarying 50 per cent ownership during all the taxable years in question and has computed his income tax upon this basis. He has considered the taxpayer George Faltico as a partner owning a 50 per cent interest from December 1, 1919, and has computed his income tax upon this basis. The taxpayers claim there were changes in the partnership and percentages of ownership, varying from that determined by the Commissioner, on January 1, 1918, July 17, 1918, January 1, 1919, and December 1, 1919.

3. After the formation of the said partnership of Miller & Colianni, there was no change until the year 1917. In September, 1917, A. T. Miller entered the Army, remaining in that service until December 1, 1918. Paul Colianni, brother of Joseph Colianni, withdrew from the firm in the year 1917 to go into business for himself. Both A. T. Miller and Paul Colianni were paid $4,000 each as their

share of the profits. These amounts were debited as expenses on the books of the partnership, and the partners, Addison Miller and Joseph Colianni, for the year 1917, apportioned the remaining profits on the basis of 50 per cent each. The partnership filed an income-tax return for the year 1917 showing the members of the partnership to be Addison Miller and Joseph Colianni, each having a 50 per cent interest in the partnership.

4. During the years in question the parties alleged to have been partners performed services at various times and in varying degrees. The taxpayer Addison Miller continuously devoted a portion of his time to the partnership of Miller & Colianni from the beginning and throughout all the years in question. He was practically in charge of the business. He devoted a part of his time to other partnerships in which he had an interest.

A. T. Miller was away in the Army practically all of the year 1918, returning to the office about December 23, 1918. He was with the firm during the years 1919 and 1920, except that, during the year 1919, he had some independent contracts which took a portion of his time. He also had some independent business in Duluth which took him away for a portion of the year 1919.

Joseph Colianni was in ill health during the years 1918 and 1919, and during his absence he paid Addison Miller $500 per month from May, 1918, for the additional burden of work. He also paid George Faltico from July 17, 1918, a stipulated sum for looking after his interests. This arrangement continued until Colianni withdrew from the firm December 1, 1919.

George Faltico came into the service of Miller & Colianni in July, 1918. During the first part of 1918 he had been employed by the United States Government as a labor agent. Prior to 1918 he had been in the employment agency business and was familiar with the employment of labor. Because of this experience he was induced to enter the service of Miller & Colianni by Joseph Colianni. He was expected to look after the interests of the partnership in Seattle and on the west coast. There was a dispute between Joseph Colianni and George Faltico as to whether the latter had an interest in the firm or was employed by Colianni. Upon the withdrawal from the firm of Joseph Colianni, December 1, 1919, and the dissolution of the partnership, Faltico was not required to sign the dissolution agreement as a partner.

P. M. Faltico, brother of George Faltico, had been employed by the firm of Miller & Colianni as a supervisor of labor since 1917. In the year 1917 he was paid $75 per month and expenses, and this was increased from time to time up to January 1, 1919. In his income-tax return for 1918 he returned $1,200 as salary and $9,633.47

as "income from partnerships." The participation of P. M. Faltico as a partner was disputed by Joseph Colianni. He took no part in the said dissolution agreement of December 1, 1919.

5. On or about the first day of December, 1919, Joseph Colianni withdrew from the partnership and sold his interest to the taxpayer George Faltico. The old partnership of Miller & Colianni was dissolved and a new partnership formed under the name of Addison Miller, which continued the same business.

The dissolution agreement was as follows:

Joseph Colianni and Addison Miller have this first day of December, 1919, entered into the following agreement:—

They have heretofore been partners under the name and style of Miller & Colianni. They have this day dissolved said partnership. Said Miller together with one Faltico will continue said business. They have heretofore and hereby release each the other from any and all claims in any manner arising out of the partnership heretofore existing and each agrees to hold the other harmless from any act of his in relation to the conduct of said partnership, heretofore.

Miller further agrees to hold Colianni harmless from any claim or demand in any manner arising out of the conduct of said business whether existing at the time of this agreement or hereafter in any manner arising in connection with the conduct of said business heretofore or hereafter.

Colianni acknowledges receipt of Fifty-one thousand, Six Hundred fifteen dollars and twenty-one cents ($51,615.21) in full discharge of all money obligations due or to become due him, unless otherwise specifically provided.

ADDISON MILLER<br>JOE COLIANNI

Witness:
  A. W. JOHNSON
  H. H. JENSEN

6. The agreement of sale from Joseph Colianni to George Faltico was as follows:

Joseph Colianni and George Faltico have this December 1, 1919, entered into the following agreement:—

Joseph Colianni has heretofore sold and hereby sells, assigns, and transfers to George Faltico all his right, title and interest of whatsoever name and nature in to or under the partnership agreement and business heretofore conducted by said Colianni with Addison Miller in St. Paul, Minnesota, subject to all debts, liabilities and incumbrances as they exist at the date hereof.

Joseph Colianni has further agreed with said Faltico that for a period of two years he will not do anything that will in any manner interfere with the continued business relations of said Miller and Faltico with the Great Northern Railway Company and the Northern Pacific Railroad Company of the kind and character that said co-partnership has heretofore had with said Railroads.

In consideration thereof said Faltico agrees; (1) to hold said Colianni free from all debts, liabilities, obligations and incumbrances of said business, former co-partnership or new co-partnership, whether incurred hereto-

fore or hereafter; (2) to pay to said Colianni the sum of Ten Thousand dollars in cash at the time of the execution of this agreement; and (3) to pay to said Colianni the sum of One hundred dollars on January 1, 1920, and One hundred Dollars on the first of each and every month thereafter for a period of thirty-six months at such place as said Colianni may from time to time direct in writing. But if the contract heretofore and now existing between said partners and the Great Northern Railway Company and the Northern Pacific Railroad Company are both cancelled then and from that time on said Faltico is relieved and released from the payment of said monthly installments of One Hundred Dollars.

7. On or about the same day, another agreement was entered into by Joseph Colianni, Addison Miller and George Faltico whereby Joseph Colianni had the privilege of reentering the firm under certain conditions. This agreement reads as follows:

Joseph Colianni, Addison Miller and George Faltico have this December 1, 1919, agreed as follows:

Heretofore Colianni and Miller have been equal partners in a business in St. Paul, Minnesota, under the firm name of Miller and Colianni. This partnership has this day been dissolved by mutual consent. Colianni has sold his interest in said business to George Faltico. Faltico and Miller have entered into a partnership arrangement to continue said business.

It is mutually agreed that said Colianni may at any time within one year from the date hereof signify his desire to rejoin said business enterprise. Thereupon, it is agreed that said Miller and Faltico will accept said Colianni as a partner on the same terms as he has heretofore had with said Miller, except that the interest of said Colianni in said business shall thereafter be 25% and said Faltico be 25% and said Miller shall be 50%. In order to carry out this agreement it is agreed that said Faltico will execute a proper agreement or bill of sale to said Colianni and all of said parties will enter into such written agreements as may be necessary to carry out the intent of this agreement. Said Colianni shall pay to said Faltico for this interest the sum of $5,000. It is understood, however, that such 25% interest in said business so to be sold and transferred to said Colianni shall be 25% of the contracts as they then exist with the Great Northern Railway Company, and the Northern Pacific Railroad Company but such interest shall in no event be greater than 25% of said contracts as they exist today would be.

Upon the re-entry of said Colianni into said firm the One hundred Dollar Monthly payments elsewhere provided for from said Faltico to said Colianni shall forthwith cease.

8. On or about December 1, 1919, after the sale of the interest of Colianni to George Faltico, Addison Miller assumed one-half of Colianni's interest, leaving George Faltico a 25 per cent interest. Thereupon, a verbal agreement was made whereby the new partnership of "Addison Miller" should be composed as follows:

|  | Per cent. |
|---|---|
| Addison Miller | 37½ |
| George Faltico | 12½ |
| P. M. Faltico | 12½ |
| A. T. Miller | 37½ |

This arrangement was continued thereafter throughout the calendar year 1920.

9. The partnership of Miller & Colianni, from its inception, employed one M. J. Schiffer as its accountant and bookkeeper. During the course of his employment he prepared certain audits and reports of the business of the partnership for the following periods: Year 1918; January 1, 1919, to June 30, 1919; July 1, 1919, to December 31, 1919. The audit for the latter period also contained a statement of conditions on November 30 and December 1, 1919, at the time Joseph Colianni withdrew from the firm.

In the 1918 audit the pertinent part of the report referring to the partnership interest was as follows:

The net worth of the partnership interests are:

| | |
|---|---|
| Addison Miller | $44, 894. 46 |
| Joseph Colianni | 38, 253. 63 |
| Net worth | 83, 148. 09 |

Net worth of Miller & Colianni business as at December 31, 1918, $83,148.09.

For the period January 1, 1919, to June 30, 1919, the pertinent part of the audit referring to the partnership interests was as follows:

### STATEMENT OF AFFAIRS.

The net worth of the partners in the business as at June 30, 1919:

| | |
|---|---|
| Addison Miller | $30, 036. 29 |
| Joseph Colianni | 21, 022. 79 |
| Total net worth | 51, 059. 08 |

Net worth Miller & Colianni business as at June 30, 1919 | 51, 059. 08

### NET WORTH ACCOUNT AS AT JUNE 30, 1919.

| | | |
|---|---|---|
| Net worth as at Jan. 1, 1919 | | $83, 148. 09 |
| Less withdrawals: Per schedule attached— | | |
| Addison Miller | $22, 902. 00 | |
| Joseph Colianni | 25, 274. 57 | |
| | | 48, 176. 57 |
| | | 34, 971. 42 |
| Add profit Jan. 1 to June 30, 1919 | | 16, 087. 66 |
| Net worth June 30, 1919 | | 51, 059. 08 |

The said audit referring to the partners' interests during the period July 1, 1919, to December 31, 1919, is dated February 14, 1920. The pertinent parts of the report and its opening statement are as follows:

The following is a report disclosing the conditions of the co-partnership of Miller & Colianni as having existed before its termination between the dates July 1, 1919, and November 30, 1919, and of the new co-partnership for and

between Addison Miller and George Faltico, as it came into being December 1, 1919, and as it exists through continuous operations from that date.

ADDISON MILLER NET WORTH ACCOUNT BEFORE PARTNERSHIP DISSOLUTION

| | | |
|---|---:|---:|
| As at July 1st, 1919 | | $30,036.29 |
| ½ of net profit—July 1st to Oct. 31st, 1919 | 26,592.41 | |
| ½ of net profit—November 1919 | 4,000.00 | |
| Total credits | | 30,592.41 |
| | | $60,628.70 |
| Less withdrawals | | 2,226.40 |
| Net worth—November 30th, 1919 | | $58,402.30 |

JOSEPH COLIANNI NET WORTH ACCOUNT BEFORE PARTNERSHIP DISSOLUTION

| | | |
|---|---:|---:|
| As at July 1st, 1919 | | $21,022.79 |
| ½ of net profit July to October | $26,592.42 | |
| ½ of net profit, November | 4,000.00 | |
| Total credits | | 30,592.42 |
| Net worth as at November 30th, 1919 | | $51,615.21 |

JOSEPH COLIANNI ACCOUNT AFTER PARTNERSHIP DISSOLUTION

| | |
|---|---:|
| Net worth, as at November 30th, 1919 | $51,615.21 |
| Charge—Interest absorbed by Addison Miller and George Faltico | $51,615.21 |
| | 00,000.00 |

The Addison Miller net worth account as shown on form following is as at December 1, 1919 _____ $105,994.00

The George Faltico net worth account as shown on form is at December 1, 1919 _____ $18,026.31

Referring back to the disposition of the Joseph Colianni net worth as at November 30, 1919, in the amount of $51,615.21:

The Joseph Colianni net worth was absorbed by the two credits of $25,-807.60 and $25,807.61 to the Addison Miller net worth account and George Faltico net worth account respectively, those credits indicating absorption of the Joseph Colianni interests by Addison Miller and George Faltico on a basis of fifty per cent.

The item of $14,782.70, shown as a deduction from the net worth of the George Faltico net worth account is so handled to show the cancellation of a loan to George Faltico (this amount offset by an equal credit to Addison Miller's net worth as shown in the Addison Miller net worth account) and to make clear of deductions the George Faltico net worth which now stands at $18,026.31.

Should Mr. Faltico make remittances to Addison Miller in whole or in part out of funds other than those carried to his credit as shown on the net worth account, he will properly be credited with same.

GEORGE FALTICO NET WORTH ACCOUNT

As at December 1st, 1919—
 Salary and expenses_____ $7,001.40
 ½ of Jos. Colianni's interest, as at November 31st, 1919 ____ 25,807.61
 ½ of Good Will_____ 5,000.00

                    $37,809.01
 ½ Good will loss to George Faltico_____ 5,000.00

                    $32,809.01
 Balance due Addison Miller to Addison Miller net worth account_____ 14,782.70

George Faltico cash net worth, December 1st, 1919_____ $18,026.31

ADDISON MILLER NET WORTH ACCOUNT

*January 1st, 1920*

As of Dec. 1, 1919_____ $105,994.00
¾ of December profit_____ 4,655.74

                    $110,649.74
Charged with ¾ of $2,118.80, an item generally distributed over the entire year. Labor charge not
 primarily deducted from Profit_____ $1,618.80
 Geo. Faltico—Expenses _____ 500.00

              $2,118.80   1,589.10

                    $109,060.64
 Addison Miller Charges—December_____ 19,833.33

 Net worth as at Jan. 1, 1920_____ $89,277.31

GEORGE FALTICO NET WORTH ACCOUNT

*January 1st, 1920*

As at Dec. 1, 1919_____ $18,026.31
¼ of December profits_____ 1,551.92

                    $19,588.23
Charged with ¼ of $2,118.80. An item generally distributed over the entire year. Labor charge not
 previously deduced from profits_____ $1,618.80
 George Faltico—Expenses_____ 500.00

Charge ¼ of this item_____ $2,118.80   529.70

 Net worth as at January 1, 1920_____ $19,048.53

In these audits and reports, prepared by the accountant and bookkeeper of the partnership, the names of no persons other than Addison Miller, Joseph Colianni, and George Faltico were set forth as

partners. George Faltico's interest was first shown December 1, 1919, after the withdrawal of Joseph Colianni. According to the audit on December 31, 1919, George Faltico's interest was 25 per cent and Addison Miller's interest was 75 per cent, each absorbing one-half of Joseph Colianni's interest.

10. There were no written agreements as to the interests of the partners other than the written agreements of May, 1917, and December 1, 1919, nor during this period were funds withdrawn from the firm by anyone as a partner, except Joseph Colianni and Addison Miller.

11. For the years 1918 and 1919 the original income-tax returns of the Miller & Colianni partnership set forth the partners substantially as herein claimed, except that for the year 1918 the interest of Joseph Colianni was given as two-sixths, or 33⅓ per cent instead of 25 per cent, and the interest of George Faltico as one-sixth, or 16⅔ per cent instead of 25 per cent; and for the year 1919 the interest of Joseph Colianni was returned as one-fourth, or 25 per cent instead of 33⅓ per cent, and the interest of George Faltico and P. M. Faltico as one-eighth, or 12½ per cent instead of 8⅓ per cent. For the year 1920 the original return of the partnership of Addison Miller set forth the partners as herein claimed. The individual returns of Addison Miller and A. T. Miller, George Faltico and P. M. Faltico conformed to the partnership returns for these years.

The ledger of the partnership contained net worth accounts, purporting to represent the net worth of the alleged partners, as follows:

Dec. 31, 1918:

| | |
|---|---|
| A. M. (Addison Miller) | $32,366.15 |
| J. C. (Joseph Colianni) | 31,646.16 |
| A. T. M. (A. T. Miller) | 10,891.95 |
| G. F. (George Faltico) | 8,243.83 |

Jan. 1, 1920:

| | |
|---|---|
| P. M. F. (P. M. Faltico) | 7,815.55 |
| G. F. (George Faltico) | 11,232.97 |
| A. T. M. (A. T. Miller) | 47,947.89 |
| A. M. (Addison Miller) | 41,279.43 |
| | 108,275.84 |

Dec. 31, 1920:

| | |
|---|---|
| Addison Miller | 69,834.32 |
| A. T. Miller | 98,502.79 |
| George Faltico | 25,261.82 |
| P. M. Faltico | 24,667.18 |

12. Since 1913 or 1914, the taxpayer Addison Miller had a contract with the Northern Pacific Railway Co. to run certain of its

boarding houses.  The headquarters of this business was in Seattle, Wash.  On account of the work involved in that city, he took in as a partner one M. V. Underwood.  In the year 1917, Addison Miller and M. V. Underwood were partners on a 50 per cent basis under the name of W. A. Miller & Sons.

W. A. Miller, the father of Addison Miller, for years had the contract for supplying labor for the Northern Pacific Railway Co. When the railroads were taken over by the Government during the World War, his income from this source was ended.  Thereupon, in January of 1918, Addison Miller turned over to him his interest in this Northern Pacific Railway boarding house contract.  Addison Miller, however, continued to assist in the supervision of the work. Prior to July 1, 1918, the boarding house contracts with the Northern Pacific Railway Co. were in the name of W. A. Miller & Sons, and the vouchers and checks of the Northern Pacific Railway were designated accordingly.  On July 1, 1918, the old contracts were canceled and a new contract was made in the name of Addison Miller. Thereafter, checks were made out by the Railway Company to Addison Miller and endorsed by him.  At the end of January, 1919, M. V. Underwood withdrew from the firm.  Addison Miller continued to supervise the business for a salary of $5,000.  In 1921 the interest of W. A. Miller was purchased by the Addison Miller partnership for $35,000.  The composition of this partnership for the years in question, and the percentage of ownership, as determined by the Commissioner and as claimed by the taxpayers, are as follows:

| | As determined by the Commissioner. | As claimed by the taxpayer. |
|---|---|---|
| YEAR 1918 TO JAN. 31, 1919. | Per cent. | Per cent. |
| Addison Miller | 25 | |
| W. A. Miller | 25 | 50 |
| M. V. Underwood | 50 | 50 |
| FEB. 1, 1919, TO DEC. 31, 1920 | | |
| Addison Miller | 100 | |
| W. A. Miller | | 100 |

The gross income of the partnership of W. A. Miller & Sons (boarding house business) for the years in question, as agreed upon by the taxpayers and the Commissioner, was as follows:

| | |
|---|---|
| 1918 | $208, 862. 06 |
| January, 1919 | 22, 258. 34 |
| February 1 to December 31, 1919 | 255, 004. 82 |
| 1920 | 439, 568. 73 |

13. The Commissioner, in determining the income of the taxpayer Addison Miller, included items of income from " W. A. Miller & Sons (labor agency)" as follows:

| | |
|---|---|
| 1918 | $4, 857. 18 |
| 1919 | 5, 548. 29 |
| 1920 | 9, 813. 97 |

The taxpayer owned a labor agency in this name in Minneapolis, but derived no income therefrom during the years 1918, 1919, and 1920, except as shown in his income-tax return. There was also an agency by this name in St. Paul, which was claimed by the Commissioner to be owned by the taxpayer Addison Miller in 1918, by W. A. Miller in 1919, and a 50 per cent interest by Addison Miller in 1920.

W. A. Miller ran a labor agency in connection with the boarding house business as his individual business, which included the above-named St. Paul agency, the income of which was included in the return of W. A. Miller.

14. The Commissioner, in determining the income of the taxpayer George Faltico, included the income from a partnership known as the Northern Pacific Labor Agency or the Faltico Labor Agency, as follows:

| | |
|---|---|
| 1918 | $10, 130. 24 |
| 1919 | 1, 515. 32 |

Prior to 1918 this labor agency was owned by the taxpayer George Faltico. On or before January 1, 1918, the said taxpayer entered the Government service as a Federal labor agent and left this business in charge of his brothers, P. M. Faltico and M. J. Faltico. On July 17, 1918, the taxpayer entered the service of Miller & Colianni, which employment necessitated his location for a large portion of the time at Seattle, Wash. He did not personally attend to this labor agency business in Minneapolis. He left the bank account of the labor agency in his own name. Deposits and withdrawals were made by his brothers up to June 3, 1919, at which time the account was changed to the name of P. M. Faltico. During this period, January 1, 1918, to June 3, 1919, the said brothers were running this labor agency for the taxpayer George Faltico. Deposits in the name of George Faltico for the year 1918 by said labor agency are shown below. The average monthly balances for the period January 1, 1919, to June 3, 1919, were approximately $500.

| Date. | Amount. | Date. | Amount. | Date. | Amount. |
|---|---|---|---|---|---|
| Jan. 2, 1918 | $457.06 | May 23, 1918 | $587.05 | Aug. 9, 1918 | $240.00 |
| Jan. 9, 1918 | 50.00 | June 3, 1918 | 883.68 | Aug. 15, 1918 | 260.90 |
| Jan. 30, 1918 | 213.50 | June 6, 1918 | 574.70 | Aug. 17, 1918 | 206.00 |
| Feb. 1, 1918 | 418.40 | July 1, 1918 | 720.95 | Aug. 21, 1918 | 57.00 |
| Feb. 11, 1918 | 271.50 | July 3, 1918 | 812.00 | Sept. 14, 1918 | 394.64 |
| Feb. 27, 1918 | 187.80 | July 12, 1918 | 494.00 | Sept. 18, 1918 | 40.00 |
| Mar. 1, 1918 | 335.00 | July 26, 1918 | 591.24 | Sept. 30, 1918 | 499.90 |
| Mar. 7, 1918 | 150.00 | July 27, 1918 | 200.00 | Oct. 22, 1918 | 100.00 |
| Mar. 15, 1918 | 140.90 | July 29, 1918 | 250.12 | Dec. 3, 1918 | 1,230.00 |
| Mar. 18, 1918 | 445.00 | Do | 579.00 | Dec. 5, 1918 | 914.90 |
| Mar. 26, 1918 | 883.00 | July 31, 1918 | 77.31 | Dec. 7, 1918 | 200.00 |
| Apr. 2, 1918 | 425.00 | Do | 56.00 | Dec. 30, 1918 | 200.00 |
| Apr. 16, 1918 | 250.25 | Aug. 1, 1918 | 250.50 | | |
| Apr. 15, 1918 | 300.00 | Aug. 2, 1918 | 254.93 | Total | 16,214.98 |
| May 1, 1918 | 586.25 | Aug. 7, 1918 | 426.50 | | |

### DECISION.

The deficiency should be computed in accordance with the following opinion. · Final determination will be settled on 15 days' notice, under Rule 50.

### OPINION.

MORRIS: The question involved in these appeals is: Who composed the various partnerships and what were the respective interests of each? There are a number of partnerships involved, for the most part created by informal, verbal agreements and understandings. The books and records are meager and incomplete, and the evidence is confusing and conflicting. For convenience we shall consider each partnership separately.

The partnership of Miller & Colianni was originally formed in 1916 by a written contract and was composed of the taxpayers Addison Miller and Joseph Colianni and their younger brothers. The predominating feature of the written agreement was that the Miller and Colianni interests should always be equal. The younger brothers dropped out in 1917 and were paid $4,000 each. In 1917 the partnership, in its income-tax return, set forth the partnership as composed of Addison Miller and Joseph Colianni, 50 per cent each. Up to 1918 the facts seem clear. For the years 1918, 1919, and 1920, the taxpayers claim various changes, both in the partners and percentages of ownership, as set forth in our findings of fact. These changes are flatly denied by the partner Joseph Colianni. In this direct conflict of testimony we must fall back upon the written evidence, documentary and otherwise. The only written instruments in relation to the composition of the partnership are those of December 1, 1919, the time Joseph Colianni withdrew. These seem to bear out the testimony of Joseph Colianni. In the dissolution agreement, the agreement of sale to George Faltico and supplementary agreements, the partners are referred

to as Joseph Colianni and Addison Miller, owning equal shares. They are the only partners mentioned and the only ones required to sign the dissolution agreement. The documents were prepared by the lawyer recommended to Colianni by Schiffer, the accountant and bookkeeper of the firm. He probably furnished the lawyer the information and the figures from which to prepare the documents. The alleged partners were there personally or available, but were not in any way considered by any of the parties as necessary parties to the dissolution agreement. It is also significant that the net worth of Joseph Colianni was recited as $51,615.21, which is the exact amount to a penny, as subsequently computed by a written audit of the books prepared by the said Schiffer a month or two later, February 20, 1920, to be exact. This net worth represented *one-half of the total net worth*. This amount must have been ascertained from some books or source agreeable to all parties. There was no dispute over the amount. The taxpayers attempt to explain away the significance of the written, sworn documents by stating that Colianni was in a hurry to get out and they were in a hurry to get him out. But it appears that the figures were readily obtainable from some source. We do not feel that we should ignore the importance of these documents as relating to the actual situation.

We can not overlook the audits prepared by Schiffer, who acted as bookkeeper and accountant all this time and up to the present time. He prepared an audit for 1918, one for the first six months of 1919, and one for the last six months of 1919. These audits were carried out to the minutest detail. In these audits Addison Miller and Joseph Colianni were recognized as partners until December 1, 1919. Their interests throughout were calculated on a basis of 50 per cent each during this period. Addison Miller attempts to explain these audits as prepared for the purpose of securing credit, but admitted they had not been used for that purpose. A close examination of these audits, however, convinces us that they were made to reflect the actual condition of the firm.

Furthermore, even the taxpayer George Faltico admitted there was a dispute as to his interest. He said:

Q. Now, then this first paragraph, "Heretofore Colianni and Miller have been equal partners under the firm name of Miller and Colianni "—When you signed that agreement did you think that was true?

A. If you would let me tell you in my own way I would like to tell you something about that, if I may have your permission.

Q. You may start out, anyway.

A. There was always a little bit of doubt in Colianni's mind whether I was a partner in this business, or whether I was employed by Colianni. He said that I was employed by him and I said I was a partner of his.

Q. Yes, go on.

A. That was in the fall of 1918 after I returned from the west.

In 1919 after I also returned from a trip to the west Colianni wanted to enter a brother of his as a partner in this business and he made the statement to me at that time that he wanted to pay me off or discharge me, which I refused to do, as I claimed I was an equal partner in that business and was not employed by Colianni.

Q. Is that all you have to say.

A. Yes, on that.

The status of George Faltico was finally determined by the dissolution agreement and the sale of Colianni's interest to Faltico, in which he was not recognized as a partner, but, on the contrary, signed a document which expressly stated that the partnership was composed equally by Addison Miller and Joseph Colianni. The requisites necessary to create a partnership do not require discussion here. Suffice it to say, however, it is one essential that there be agreement among all the parties of a partnership as to the members of the partnership.

It is true the partnership filed tax returns showing the interests of partners substantially as claimed herein, and also that the individual returns conformed substantially to the partnership returns. But these are the returns that the Commissioner disputes. There is also a discrepancy between the percentages of ownership in the returns and those claimed at the hearing, which would indicate that any such purported arrangement was vague and uncertain in the minds of the alleged partners. Up to December 1, 1919, therefore, there is a clear preponderance of evidence to sustain the contention of the Commissioner as to the composition of the partnership.

For the balance of the year 1919 and the year 1920 the evidence supports the taxpayers' contention. The parties testified that there was an oral arrangement that the partnership should be continued as "Addison Miller" and that the interests of the partners were as claimed herein. There is no written or oral evidence to dispute this point as to the year 1920. Joseph Colianni, during this period, was away and not connected with the partnership. We must hold that from December 1, 1919, to December 31, 1920, the partnership was composed of Addison Miller, 37½ per cent; A. T. Miller, 37½ per cent; George Faltico, 12½ per cent, and P. M. Faltico, 12½ per cent.

The partnership of W. A. Miller & Sons, boarding house business, involves the taxpayer Addison Miller and W. A. Miller. All arrangements and agreements were oral and informal. There were strong indications that Addison Miller practically ran this business, particularly after July 1, 1918, when the boarding house contract

with the Northern Pacific Railway was changed to and signed by Addison Miller, and all payments were made to him, but the taxpayer Addison Miller testified positively that there was a family arrangement between him and his father and that he merely drew a salary for his work. The father returned income from this source as his individual income. We are inclined to give the taxpayer the benefit of the doubt and sustain his contention in this regard. There was also a dispute as to the method of computing income of this partnership, but our holding does not necessitate consideration of that point. We are of the opinion that the taxpayer Addison Miller had no interest in this partnership during the years in question.

The evidence in regard to W. A. Miller & Sons, labor agency, is vague, both on the part of the Commissioner and the taxpayer. The Commissioner ascribes income to Addison Miller from this source as follows:

| | |
|---|---|
| 1918 | $4, 857. 18 |
| 1919 | 5, 448. 29 |
| 1920 | 9, 813. 97 |

It appears that the father, W. A. Miller, ran a labor agency as an individual in connection with the boarding house business. There was an agency at St. Paul and one at Minneapolis. The taxpayer admits ownership of a labor agency in Minneapolis, but any income from that source was returned as income in his individual return. He denies ownership of the St. Paul agency, as that was his father's, who returned income from that agency in his individual income-tax return. In the light of the testimony, we are of the opinion that the taxpayer Addison Miller received no income from the W. A. Miller & Sons (labor agency) partnership other than that returned by him.

The income from the Northern Pacific Labor Agency (Faltico Labor Agency) was attributed by the Commissioner to be that of George Faltico during the period January 1, 1918, to June 3, 1919. The evidence on this was conflicting, even among the witnesses of the taxpayer. The taxpayer explains that, during the first part of the year 1918, he was a Federal labor agent and had turned this business over to his brothers, P. M. Faltico and M. J. Faltico, and that from July 17, 1918, he was with the firm of Miller & Colianni and was for the most part at Seattle, Wash. However, the evidence discloses that during this time the bank account of this partnership was left in the name of George Faltico, and that substantial deposits from the agency were made throughout the year 1918, amounting to $16,214.98, and that during the year 1919 to June 3, 1919, the average monthly balance was $500. On June 3, 1919, the account was

changed from the name of the taxpayer to that of his brother, P. M. Faltico. At the hearing P. M. Faltico testified on direct examination:

Q. Were you interested in the labor agency in Minneapolis known as the Faltico Labor Agency, or some other such name?
A. When was that?
Q. 1918.
A. No, sir.
Q. 1919?
A. No, sir.
Q. Did your brother George Faltico turn any labor agency over to you in Minneapolis?
A. Not to me, he did not.
Q. And you had no interest in it?
A. No interest whatsoever in the labor business.
Q. And your brother M. J. had an interest in it?
A. M. J. Faltico in 1919, I think it was.
Q. 1919?
A. Yes, 1919.

On cross examination he testified:

Q. Were you connected with this labor agency at 7th and Marquette Avenue at any time?
A. In 1923 I ran it.
Q. In 1918, 1919 and 1920?
A. I had nothing to do with it.
Q. You had nothing to do with it at all?
A. No.
Q. Why did you deposit in it in the name of George Faltico, then?
A. Just looking after his interests while he was away.
Q. Did you deposit any moneys in that bank during 1919, or if you did, it was for George Faltico, wasn't it?
A. M. J. Faltico.
Q. And also George?
A. No.
Q. You don't remember ever having a bank account in your name in that bank?
A. No.
Q. During any of these years?
A. No sir.

The taxpayer's testimony was that P. M. Faltico ran the business during this period, but this brother testified he was merely looking after it for the taxpayer.

It seems clear to us that the brothers were running this business for George Faltico in his absence. We therefore find that during the period January 1, 1918, to June 3, 1919, the taxpayer George Faltico was the owner of this business and the income derived therefrom should be computed accordingly.

On reference to the Board, SMITH did not participate.